SAVOY, Judge.
This is a suit for workmen’s compensation benefits brought by the plaintiff as the result of an alleged permanent total disability incurred through an occupational disease contracted while he was employed by Louisiana Menhaden Company, which company was insured by the defendant. The primary question with which we are here concerned is whether plaintiff suffered an occupational disease within the meaning of the Louisiana Workmen’s Compensation Act.
The record reveals that plaintiff, a colored youth nineteen years of age, went to work for Louisiana Menhaden Company on June IS, 1965, and worked until about July 1, 1965, when his right leg became swollen. Plaintiff worked in the dryer room for his first five days, but then worked his next ten days as a fish bailer in the holds of vessels containing menhaden fish brought to his employer’s docks to be unloaded and processed. Plaintiff’s duties as a fish bailer consisted of going into the hold of a ship where the fish are located, and by the use of a high-pressure water hose, washing the fish into the suction of a pump which pumps the fish into the plant for further processing. Occasionally water and fish slime would enter the boots of the bailers while they were conducting their bailing duties.
On July 2, 1965, plaintiff contacted Dr. Cecil W. Clark, a general practitioner in Cameron, Louisiana, who had been the company doctor for many years. Dr. Clark admitted plaintiff to the South Cameron Memorial Hospital on the same *741 day, where he was confined for four days during which plaintiff’s swelling diminished and he was discharged. Plaintiff was allowed to return to work as a fish bailer on July 19, 1965, and worked until July 21, 1965, at which time his right leg became swollen again. He again consulted Dr. Clark and again received medical treatment. Walter remained under the care of Dr. Clark, and on October 5, 1965, Walter was referred to Dr. Howard Mahorner, a general surgeon and specialist in lumphatic conditions, for examination. Plaintiff was further examined by Dr. Robert O. Emmett of Lake Charles at the instance of the defendant, and consulted Dr. Gerald S. Kal-ter in New York, New York, for further examination while he was attending school.
After a trial on the merits, judgment was rendered in favor of the plaintiff in the amount of $14,000.00, medical expenses and costs because of a finding that a preponderance of the evidence reflected that Walter had suffered an occupational disease of a permanent nature disabling him to return to the manual labor of a “fish bailer”. The lower court denied plaintiffs claim for penalties and attorney fees.
Defendant contends on appeal that the trial court erred: (1) in failing to require plaintiff to prove his case by an overwhelming preponderance of the evidence since the occupational disease was contracted within twelve months of plaintiff’s employment; and (2) in failing to maintain the plea of prescription of four months filed by the defendant. On the other hand, plaintiff answered the appeal contending that the award should be increased to include penalties and attorney fees.
LSA-R.S. 23:1031.1(C) provides:
“Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months’ limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months’ employment by an overwhelming preponderance of evidence.”
It is readily seen from a reading of the statute supra that our legislature clearly set the standards by which an occupational disease may be deemed to have occurred. The statute expressly provides that any occupational disease contracted within one year shall be presumed to be non-occupational unless proved by an overwhelming preponderance of the evidence. In our opinion, the evidence adduced at the trial of the case and by deposition fails to establish by an overwhelming preponderance of the evidence that the infirmity contracted was contracted during the course of and arising out of the employment.
Plaintiff, Walter Bartie, testified by deposition and stated that he had performed the duties of a fish bailer in the summer of 1964 also. He said that a friend of his noticed that his right leg was swollen, but that he did not notice that the right leg was any different in color from the left leg and there were no marks visible on the leg, and pain was present in the groin area only.
Dr. Cecil Clark, the company physician, testified that Walter did not know what caused the swelling of his leg. His examination disclosed pain in the femoral area and a slight redness around the leg which he thought indicated a cellulitis of the leg. He then decided that plaintiff had a lymphedema probably due to a low grade infection, and that there was no break in the skin of the leg. Dr. Clark admitted that the condition could develop from numerous causes, one being familial, and he likewise said that Walter was the first *742 person that ever had lymphedema caused by the fish oils. When questioned on cross-examination as to whether he thought something might be present because of the absence of symptoms on the surface of the skin to indicate inflammation or anything else, he replied: “There has — in trying to rule out your problem, and that was one problem of mine too. I was wondering if I was missing a deep vein thrombosis, which would cause a stasis of the venous system, and do the same thing. I was wondering if I was missing anything. That’s why I referred the man. * * * When asked whether he could state with a reasonable degree of medical certainty that Walter’s condition resulted from that employment, Dr. Clark answered: “No. You couldn’t actually put your finger on the etiology of this to say specifically this is causing this disease. No, that’s not possible. I only felt after everything was ruled out that this was perhaps the greatest possibility. As you said earlier, there ■could be other accidents, there could be other injuries and other reasons. * * Dr. Clark admitted that the knowledge of medical science relating to pathology and diseases and treatment of the lymphatic system were fields about which little is relatively known.
The testimony of Dr. Howard Mahorner was taken by deposition. According to the deposition, an X-ray examination was made of Walter’s venous system to be sure it wasn’t blocked, and since it proved negative, Dr. Mahorner felt Walter had a lymphe-dema. His testimony further shows that he found enlarged nodes, lymph glands in the right groin although he was unable to determine the cause of the lymphedema. He said that contact with the fish slime ■could have been a factor in the lymphe-dema, but it could also have been acquired in a number of other ways. He could not state with a reasonable degree of medical certainty that Walter’s working condition caused the lymphedema.
The deposition of Dr. Robert O. Emmett was taken on behalf of the defendant. Dr. Emmett’s only positive finding after examining Walter was a swelling of the right lower leg, and he saw no evidence of skin diseases, no leg ulcers, no lymph nodes, and no discoloration. He felt that since Dr. Mahorner found the veins of Walter’s leg were normal and not obstructed that Walter had a condition known as lymphe-dema. He then testified that he had no idea or opinion as to what caused the lym-phedema, and he expressly ruled out any condition of dermatosis since any severe dermatitis would be accompanied not only by swelling but also by pain and redness.
The report of Dr. Jerald S. Kalter, who examined plaintiff in New York, revealed that plaintiff had sprained his ankle three or four months before the onset of the swelling. A rectal examination was suggestive of a tender mass anterior to the rectum. It was his impression that Walter had a phlebothrombosis of the right leg etiology unknown. Dr. Kalter advised Walter to enter the hospital to determine whether there was a pelvic mass present which might account for the pressure on the venous return from the leg.
For the reasons assigned the judgment of the district court in favor of plaintiff is reversed, and judgment is now rendered in favor of the defendant insurance company and against the plaintiff.
Reversed.
On Application for Rehearing.
En Banc. Rehearing denied.