330 So.2d 295 (1976)
Buster Joseph CHIVOLETTO
v.
JOHNS-MANVILLE PRODUCTS CORPORATION.
No. 56998.
Supreme Court of Louisiana.
March 29, 1976.
On Application for Rehearing May 14, 1976.
*296 David Gertler and Joseph M. Singerman, The Law Offices of Steven R. Plotkin, New Orleans, for plaintiff-applicant.
Bruce A. North, Baldwin, Haspel, Molony, Rainold & Meyer, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Certiorari was granted on plaintiff's application to resolve three issues presented in this workmen's compensation suit: 1) Was plaintiff totally and permanently disabled? 2) Was defendant's action in refusing to pay compensation arbitrary and capricious? 3) Had the plaintiff's action prescribed?

I.
This case involves facts which are not disputed. The Court of Appeal accepted the findings of fact of the trial judge, and plaintiff relies upon these findings to support his claim that he is entitled to total and permanent disability under the Workman's Compensation Act. The issue, then, is whether, from the facts of record, plaintiff is, as he contends, totally and permanently disabled.
Plaintiff brings this action pursuant to Section 1031.1 of Title 23 of the Revised Statutes, which is the occupational disease section of Louisiana's Workmen's Compensation Act. He alleges that he was employed by Johns-Manville Products Corporation from 1948 through 1970 in various capacities as a common laborer in its New Orleans plant. The facts show that asbestos was employed there in the manufacture *297 of pipe and other products. Plaintiff was in time a lathe operator, fashioning asbestos pipe and was engaged in that employment at the time of his termination. His discharge from employment was due to the shutdown of the plant.
While in the employ of Johns-Manville during March 1970 plaintiff participated in a pulmonary (lung) function study of 900 workers from Johns-Manville and National Gypsum Company.
After his separation on October 1, 1970 from Johns-Manville, plaintiff was employed by Hunt-Wesson Foods in Gretna as a laborer performing odd jobs. His work there was satisfactory. This employment was interrupted by a lay-off for five months. During this interval plaintiff obtained employment with Hydril, Inc., a company engaged in the business of threading oil field tubular goods. Here plaintiff's job involved handling pipes before and after threading, storage of pipe, loading trucks, hydrostatic testing and similar work. At the end of five months, plaintiff returned to work with Hunt-Wesson Foods where the pay was better. His duties required only mild exertion, commensurate with the exertion required to perform his duties as lathe operator with Johns-Manville.
Then, on March 1, 1972, plaintiff obtained employment with the Parish of Jefferson as Sewerage Treatment Plant Operator working in the lab, repairing motors, turning valves, occasionally loading trucks, raking sewerage disposal areas, and other duties as assigned. Again his work was satisfactory and during the course of this employment he received merit raises in pay. While thus employed he experienced an episode of difficulty in breathing on February 25, 1973 and sought medical attention. After X rays and examination by Dr. Morton Brown he was advised on March 3, 1973 that he had asbestosis, a condition involving interstitial fibrosis of the lungs.
Plaintiff instituted this suit on May 15, 1973, alleging that he contracted asbestosis while in the employ of Johns-Manville, claiming total and permanent disability under the terms of the occupational disease statute, La.R.S. 23:1031.1. At the time of the trial on March 12, 1974, he was still in the employ of Jefferson Parish as a Sewerage Treatment Plant Operator earning $585 per month, more than he earned in the employ of Johns-Manville.
From the 1970 study and from X rays and examinations performed by three doctors after March 3, 1973 and the other evidence, the trial judge, in a lengthy and thorough opinion, drew these conclusions:
The plaintiff ceased work with Johns-Manville because he, along with several hundred other workers, was laid off. This lay-off had nothing to do with plaintiff's health and was solely for business or economic reasons as determined by Johns-Manville. At the time of his lay-off in 1970, plaintiff was actually able to perform his duties as a lathe operator; he is neither legally nor factually disabled from performing his duties as a sewerage plant operator for his present employer, the Parish of Jefferson, and he is presently satisfactorily performing the duties of his new occupation without undue pain or discomfort and without danger to himself or to others. Plaintiff could not now work at any occupation in an environment which necessitated his exposure to asbestos or silica particles in the atmosphere without severely endangering his health.
Finding that plaintiff had asbestosis, the trial judge reasoned that although plaintiff was not disabled, his lung condition and shortness of breath would entitle him to an award under the Workmen's Compensation Act. Accordingly, he found that the usefulness of a physical function (his lungs) was seriously and permanently impaired, allowing compensation under Section *298 1221(4)(p) of the Act[1] for 100 weeks at $49 per week, plus past and future necessary medical expenses. This award was affirmed in the Court of Appeal.
According to the 1970 study which included X rays, physical examination and tests of each participant, there was not then any indication of plaintiff's subsequently diagnosed asbestosis. Defendant's expert medical witness, a medical doctor of reknown in the field, who gave his opinion of the findings, stated the lung volumes were all within normal limits. Vital capacity, residual volume and total capacity all exceeded the predicted normals. He did testify, however, that plaintiff exhibited evidence of emphysema which can produce airway obstruction and that there was no correlation between emphysema and asbestosis. In addition, he found that plaintiff was a heavy smoker and suffered from bronchitis, stating that there was a definite correlation between bronchitis and smoking.
In response to a question from the Court as to the condition of plaintiff's lungs in 1970, defendant's medical expert stated that plaintiff had "slight" obstruction to airflow and "minimal" reduction in diffusion capacity. He further stated that the level of impairment was not likely to be clinically significant, that is, it would not be expected to be associated with significant exercise or tolerance and not likely to cause significant shortness of breath.
In support of these expert opinions the record makes clear that plaintiff worked steadily after leaving Johns-Manville's employ and, aside from his own uncorroborated statement that he sometimes had trouble breathing, he was apparently not limited in the physical activity which his employment required.
Later lung function studies made on plaintiff in March 1973 revealed normal lung volumes and a normal index of pulmonary mixing. Evidence did exist, however, of mild obstructive change which was compatible with asbestosis, smoking, emphysema and bronchitis, all of which were present at times in plaintiff's medical history. It was the opinion of defendant's experts that plaintiff's subjective complaints (shortness of breath) were disproportionate to the objective findings and that plaintiff was capable of working.
In addition to the functional studies, plaintiff underwent extensive radiological examination. It is undisputed that the X rays indicated the presence of some interstitial fibrosis. Defendant's medical expert had the benefit of X rays taken in connection with his examination of 1970 and X rays taken in 1973. He testified that the fibrosis apparent in the 1970 X rays was minimal or mild in extent, and that there was no difference in the extent of fibrosis demonstrated between 1970 and 1973. This is an important factor since asbestosis is considered to be progressive, even in the absence of continued exposure to asbestos dust.
Plaintiff's medical expert, to some extent, based his opinion on the results of tests performed by defendant's experts, because the hospital where he practiced was not equipped to perform those tests. He agreed that plaintiff's lung function studies were within normal limits with the exception of a low P.C.O.2 factor indicative of hypertension. He nevertheless testified that plaintiff could not return to his work *299 as a lathe operator. But this opinion seems to be based not so much upon plaintiff's physical condition, but upon the doctor's belief that plaintiff should not be further exposed to asbestos dust.
In view of the findings of the trial judge, which were undoubtedly based to some extent upon the credibility of the witnesses, especially plaintiff's subjective complaints, and the complete acceptance of those findings by the Court of Appeal, together with our own study of the record, we are unable to conclude that plaintiff is totally and permanently disabled as he contends. However, in view of the progressive nature of asbestosis, plaintiff is reserved the right to file another compensation claim if and when he becomes disabled as a result of the occupational disease he has contracted. LaCoste v. J. Ray Mc-Dermott & Co., 250 La. 43, 193 So.2d 779 (1967). Prescription on this claim has been interrupted by the filing of this suit within four months of the date the disease first manifested itself. In the event plaintiff does become disabled and entitled to compensation for that reason, defendant shall receive credit for payments made as a result of the instant suit.
Defendant argues that, in the absence of a showing of disability as a result of an occupational disease, no recovery is available to plaintiff, for by the express terms of the statute on the subject, and this Court's decision in LaCoste v. J. Ray McDermott Company, 250 La. 43, 193 So.2d 779 (1967), disability is a prerequisite to the entitlement to compensation under the occupational disease statute. The relevant portion of the occupational disease statute provides:
"Every employee who is disabled because of the contraction of an occupational disease as herein defined (asbestosis being defined as an occupational disease) . . . shall be entitled to the compensation provided in the Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment." (parentheses added). La.R.S. 23:1031.1A.
While this question was answered in the LaCoste Case, the question of entitlement to compensation "where the usefulness of a physical function is seriously permanently impaired" as provided for in Section 1221(4)(p) (see footnote 1) was not considered. Regardless of the merits or demerits of defendant's contention, this Court will not amend the judgment rendered in the Court of Appeal in defendant's favor because defendant has not applied for writs seeking its amendment. As a result defendant is limited to opposing the relief sought by plaintiff, which, on this issue, is a claim for an award of compensation based upon a finding of total and permanent disability. Since we deny plaintiff's claim for total permanent disability the judgment in plaintiff's favor awarding compensation for impairment of a physical function remains in full force and effect.

II.
Although the trial court denied plaintiff's claim for penalties and attorney's fees under Section 1201.2 of Title 23 and Section 658 of Title 22 of the Revised Statutes, this phase of the case assumed a different posture when plaintiff's award for 100 weeks compensation at $49 per week was affirmed by the Court of Appeal and defendant did not timely apply for writs to review that judgment. Thus plaintiff's judgment became final insofar as that award was concerned. Proof of plaintiff's loss to the extent of that judgment was then established to a legal certainty. The continuing demand represented by plaintiff's application for writs, and the expiration of sixty days, completed the *300 law's requirements. Withholding payment of compensation thereafter became arbitrary and capricious, entitling plaintiff to penalties and attorney's fees as prescribed by the act.
Considering the time and effort expended by plaintiff's attorneys in the prosecution of this claim in the trial court, the Court of Appeal and in this Court, a fee of $1,000, in addition to the fee agreed upon by plaintiff and his counsel under the limitations provided in Section 1141 of Title 23 of the Revised Statutes, is considered reasonable.

III.
Insofar as defendant's plea of prescription is concerned, that issue is also finally determined adversely to defendant.
Defendant filed the plea of prescription in the trial court and the plea was denied. The Court of Appeal affirmed, saying the facts of the case would not support defendant's plea of prescription. No application for review of that adverse ruling has been filed by defendant in this Court and no relief from its effect can be granted to defendant.
This Court has consistently held that it will not amend a judgment to the prejudice of the party at whose instance the writ issued where the opposing party has failed to make application seeking such amendment. Gulotta v. Cutshaw, 283 So.2d 482 (La. 1973); Francis v. Lake Charles American Press, 262 La. 875, 265 So.2d 206 (1972); Pennington v. Justiss-Mears Oil Co., 242 La. 1, 134 So.2d 53 (1961); Foley v. National Life and Accident Ins. Co., 183 La. 49, 162 So. 798 (1935); Black v. Louisiana Central Lumber Co., 161 La. 889, 109 So. 538 (1926). A judgment should not be amended to benefit parties who have failed to apply for review. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). Although the Court may in its discretion permit the filing of a plea of prescription in this Court, it will not do so when the plea has been previously asserted at a lower level. Gullota v. Cutshaw, supra; Succession of Douglass, 225 La. 65, 72 So.2d 262 (1954). Notwithstanding these obstacles to defendant's contention that plaintiff's claim has prescribed, as already noted, the facts recited support a finding that plaintiff filed his claim within four months after the asbestosis manifested itself.
For the reasons assigned, plaintiff is awarded penalties as provided by law and attorney's fees in the amount of $1,000, in addition to the fee agreed upon by plaintiff and his counsel under the limitations provided in Section 1141 of Title 23 of the Revised Statutes. In all other respects the judgment of the Court of Appeal is affirmed.
TATE, J., dissents and assigns reasons.
CALOGERO and DENNIS, JJ., dissent for reasons assigned by TATE, J.
TATE, Justice (dissenting).
The plaintiff is entitled to benefits for permanent and total disability. He is a skilled or semi-skilled lathe-operator disabled by his work-disease from performing the duties of the employment in which the disease was incurred.
Under the occupational disease statute, his disability caused by his work-disease is compensable "the same as if said employee received personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031.1A. As stated in LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779, 782 (1967), applying the same test for disability resulting from an occupational disease as that resulting from an occupational accident: "In fine, in Louisiana `disability' has always been interpreted and understood to mean inability to perform the same or similar work the *301 employee was doing when injured." (Italics mine.)
As a result of the employment-caused disease, the plaintiff employee can never return to work in the asbestos field. It was in this employment of some twenty-two years that the plaintiff incurred his present disabling disease.
This disability is compensable under our jurisprudence, as being a disability which prevents his return to this field of skilled or semi-skilled employment. The resulting physical incapacity thus narrows his field of employment opportunity and his ability to earn a living. Under well-settled principles, this loss of earning capacity is compensable, despite the plaintiff's present ability to earn a living in other fields of labor, such as at the sewerage plant at which he presently works as a common laborer.
I also have reservations about the imposition of penalties upon the defendant.
I therefore respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM:
Considering the stipulation of counsel that, although not part of the record, the judgment of the district court rendered on May 31, 1974, together with costs, was in fact satisfied by defendant, within a reasonable time after rendition, in accordance with the facts set forth in a stipulation filed herein, we now modify and amend the judgment and decree rendered herein to strike therefrom the award of attorney's fees in the amount of $1,000.
The parties hereto are granted the right to apply for a rehearing on the issue adjudicated in this per curiam opinion.
NOTES
[1] La.Rev.Stat. 23:1221(4)(p) provides:

"In the following cases the compensation shall be as follows...
"(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."