CHEHARDY, Judge.
Plaintiff, Edward Harris, Jr., instituted this suit for total and permanent disability benefits and penalties and attorney’s fees, under the provisions of LSA-R.S. 23:1031.-1, the occupational disease section of the Workmen’s Compensation Act. Named defendant was his former employer Johns-Manville Sales Corporation.
Following trial on the merits, judgment was rendered in favor of defendant dismissing plaintiff’s suit with prejudice. Plaintiff has appealed.
The issues presented for our determination are whether or not plaintiff has carried his burden of proof in establishing that he contracted asbestosis which rendered him totally and permanently disabled as a result of his employment with defendant, or, alternatively, whether he is entitled to judgment for loss of a physical function. We must also determine whether the trial court erred in dismissing plaintiff’s suit with prejudice.
As stated in this court in Laurendine v. Fischbach & Moore, Inc., 398 So.2d 1220, 1221 (La.App. 4th Cir.1981):
“The plaintiff in a workman’s compensation action based on occupational disease must establish by a preponderance of the evidence that there is a disability which is related to the employment related disease. LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967). Similarly, the plaintiff must show that he contracted the disease during the course of his employment and that the disease was the result of the nature of the work performed. Bates v. Bituminous Casualty Corp., 266 So.2d 556 (La.App. 3d Cir.1972). It is sufficient that he establish the cause of his disability by a reasonable probability. Bryant v. Magnolia Garment Co., Inc., 307 So.2d 395 (La.App. 2d Cir.1975).”
The record consists of the testimony of plaintiff and four expert witnesses: Dr. Morton Brown and Dr. Michael LeBrun, specialists in pulmonary diseases and internal medicine, called as experts by plaintiff; Dr. Robert Jones, a pulmonary specialist, and Dr. Richard Datzman, a radiologist, testified on behalf of the defendant.
Plaintiff testified he was employed as a common laborer by defendant for six months in 1963. He worked in the pipe plant unloading bags of asbestos from box cars. The plant was dirty and dusty, and the bags often broke spilling asbestos on the floor.
Plaintiff returned to work in 1964, first in the pipe plant, and then in the grinding room regrinding pipes made of asbestos, sand and cement. The employees were provided with respirators because the area was dirty and dusty. However the rule about wearing the respirator was not enforced. Plaintiff worked for defendant in a variety of jobs, including making epoxy and painting the ends of asbestos pipes, working in the shingle department and driving a paver truck (similar to a power lift) in defendant’s yard. He was laid off in 1970, and the following day began to work as a *752 roustabout and compressor operator for Texaco.
In 1973 he left Texaco to operate his own dump truck. The business prospered and he now owns two trucks and manages and supervises two employees.
Plaintiff claims he began to experience shortness of breath and loss of energy in 1977, which adversely affected his lifestyle. He formerly enjoyed active participation in basketball and baseball, but is unable to do so now. He did not seek medical attention until 1980 when he consulted attorneys who, aware of his prior employment with defendant and involvement with 'asbestos, referred him to Dr. Brown.
Dr. Brown testified he first saw Harris on May 29, 1980. Plaintiff complained of shortness of breath on exertion. He described his work for seven years with defendant and was concerned about the symptoms and their relationship to that employment. Brown referred plaintiff to Jo Ellen Smith Hospital for a complete evaluation.
A pulmonary function test was taken at the hospital. Two x rays of the chest were reviewed, interpreted and evaluated by Dr. LeBrun. These x rays had been lost or misplaced by Dr. Brown’s employees and were not available for interpretation at the time of trial.
Following the hospital work-up Dr. Brown concluded the x' ray and EPA view were almost normal except for thickening at both apexes of the lungs. The oblique views showed definite marked thickening of the pleural surfaces over both lungs and throughout the entire lining. Dr. Brown found this characteristic of exposure to asbestos which would be evidence of injury to the lungs by the asbestos fibers. The pulmonary function studies revealed a mild reduction in the vital capacity with no evidence of obstruction.
Plaintiff was discharged on June 29 with a diagnosis of pleural thickening of the lungs due to asbestos. He was also treated for a urinary track infection and thickening of the heart muscle. He was to return to Dr. Brown in one month for further evaluation and discussion. He did not return until February 19, 1981, at which time another x ray was made and a breathing test was given.
Plaintiff was to come back the following day, but did not return until July 11, 1982. At that time another x ray was taken, and a pulmonary function test was made. Then, for the first time Dr. Brown discussed his diagnosis of asbestosis with plaintiff.
The doctor testified the amount of damage, in view of the seven year’s exposure, was relatively mild but there was a definite injury and plaintiff therefore had other potential risks, such as a progression of the disease, cancer of the lung, cancer of the pleura and other sites, which is very common among asbestos workers. No treatment was recommended at any of Dr. Brown’s four evaluations over the two-year period.
Dr. LeBrun testified he was unacquainted with Mr. Harris, and had neither seen nor examined him. His office performed a pulmonary function test and a blood gas analysis on June 30, 1980 at Jo Ellen Smith Hospital and the doctor simply evaluated those tests.
He testified that the pulmonary function test indicated plaintiff’s total lung capacity was 75% of its predicted capacity. This can be indicative of lung disease. Harris tested lower than normal in other test areas, but this was suggestive of restrictive processes such as interstitial fibrosis. The blood gas analysis test was normal.
Dr. LeBrun confirmed that the tests are not diagnostic of anything, but simply an indication as to possible problems, “in other words you could have 20 diseases with the same results.”
Dr. LeBrun stated he had no way of knowing if plaintiff was suffering from asbestosis, and the interstitial fibrosis he noted was just a suggestion and could easily have been due to other causes. He “absolutely” denied saying plaintiff had asbestosis.
*753 Dr. Jones, defendant’s pulmonary expert, evaluated Harris on August 16, 1982. Plaintiff complained of shortness of breath. At that time, chest x rays taken on that date at Tulane Medical Center showed some evidence of calcium deposits and pleural thickening. The doctor stated the results were normal. In his opinion the x rays presented no evidence of dust disease. He concluded plaintiff was not suffering from interstitial fibrosis and that his lungs in no way restricted him from working.
Dr. Jones had taken an in-depth history from plaintiff and was aware of the duties of his job with defendant and Texaco as well as plaintiffs detailed medical history. He looked for abnormalities which would be relevant to possible asbestos exposure, silica exposure or the effects of dust in general, but found nothing. An electrocar-diagram and a lung function test were also performed, but plaintiffs cooperation was poor.
In Dr. Jones’ opinion there was no evidence of a dust disease of the lungs. The lung function was apparently normal and there was no evidence of significant respiratory symptoms. He concluded plaintiff was not suffering from asbestosis.
Dr. Datzman reviewed plaintiff’s 1980 x rays at Jo Ellen Smith Hospital. He found no radiographic evidence of asbestosis nor evidence of any scarring or abnormalities of the lung. He also reviewed x rays from Tulane Medical Center and came to the same conclusion. He found no evidence of pleural thickening in any of the x rays.
After a careful review of the record, we find there has been no showing of any manifest error committed by the trial judge in determining that plaintiff has failed to carry his burden of proof that he is totally and permanently disabled, or that plaintiff suffers from any disability at this time associated with impairment of a useful physical function. Therefore the trial court acted properly in dismissing plaintiff’s claim.
Inasmuch as our Supreme Court recognizes asbestosis is a progressive disease, we do agree with plaintiff’s contention that his suit should have been dismissed without prejudice and we will amend the judgment accordingly. See Chivoletto v. Johns-Manville Products Corp., 330 So.2d 295 (La.1976), and LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967).
For the reasons assigned the judgment appealed from is amended so as to dismiss plaintiff’s claim without prejudice. In all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED.