DUFRESNE, Judge.
This is an appeal by Celotex, Corp., defendant-appellant, from a workman’s compensation award to its former employee, Alance Hartman, plaintiff-appellee, for a permanent impairment of his lungs due to exposure to fibrogenic dusts.
Alance Hartman, an electrician, was employed by Johns-Manville Sales Corp., from 1949 to 1970, during which time he was exposed to asbestos and silica dusts. From 1970 to 1981, he worked for Celotex Corp., spending 30% of his time in the shop and 70% in the plant. He testified that during his last year with Celotex, he began to experience shortness of breath and tired easily on the job. He decided to resign. Some months later he was diagnosed by Dr. Morton Brown, an expert in lung diseases, as suffering from “mixed dust pneu-moconiosis”, a scarring of the inside of the lungs caused by exposure to a number of industrial dusts such as asbestos, silica, talc and mica. Although several pulmonary studies indicated that his lungs functioned within normal limits, one such study revealed that he showed fatigue after exertion and that the oxygen level in his blood was abnormally low. Dr. Brown testified that such test results were not unusual in patients suffering from pneumoconiosis. It was his further opinion that while Hartman’s condition was probably initiated by asbestos and silica exposure at Johns-Man-ville, any further exposure to mica, talc and silica at Celotex would also have been a causative factor in the development of the disease.
*1312 In regard to the presence and levels of these latter substances, Hartman introduced a report prepared for Celotex in 1974 by Arthur Neilson, an industrial hygienist, which concluded that silica was present at levels in excess of allowable limits. Weldon McDonald, a paint mixer, testified that talc and mica were used to make certain paints. These substances came in bags which he broke open into the mixing tanks. He noted that although the mixers had dust removal systems, these systems often broke down or choked, and during such failures, dust would “fly all over”. He further stated that Hartman worked on the paint mixing machines from time to time and that conditions in the paint department were “dusty, plenty dusty”.
In rebuttal, Celotex called Dr. Robert Jones, also a specialist in lung diseases. He examined Hartman once and agreed that his chest X-rays showed evidence of damage due to asbestos exposure, but disputed whether that damage had reached a stage where it could properly be diagnosed as pneumoconiosis. He further stated that in his opinion, Hartman’s condition had not been exacerbated by exposure to dusts at Celotex. This opinion was based on information as to the silica, talc and mica levels at Celotex supplied to him by Dr. Yehia Hammad, an industrial hygienist. ' The results of three tests conducted at Celotex by Dr. Hammad between 1981 and 1983, indicated that at those times, the levels of all fibrogenic dusts in the plant were miniscule when compared to standards set by OSHA.
Two other physicians who only examined Hartman’s medical records basically concurred with Dr. Jones’ opinion that his condition could not yet be diagnosed as pneu-moconiosis, and that his lungs did not appear to be functionally impaired.
On the basis of this evidence, the trial court cast Johns-Manville in judgment for $49 per week for 50 weeks plus one-half of all past and future medical expenses relating to the disease, and Celotex for $163 per week for 50 weeks, plus the remaining one-half of the medical expenses. Although no reasons for judgment appear in the record, because the judgment reserved to Hartman the right to file another compensation claim if and when he becomes disabled as a result of the occupational disease, it is clear that this award was for an impairment of a physical function of the lungs pursuant to La.R.S. 23:1221(4)(p).
Celotex now appeals, and Hartman has answered that appeal. Johns-Manville has not appealed.
Celotex urges here that Hartman failed to prove that:
1) He has either a disability or an impairment of the lungs which is compensa-ble, and;
2) That if either of the above conditions do exist, that it was caused by his work at Celotex.
Because these allegations involve factual issues, our standard of review is not whether we might have reached a different conclusion from the evidence, but whether the trial court committed manifest error in its findings of fact, Canter v. Koehring, 283 So.2d 716 (La.1973). Because we find no such error here, we affirm those findings.
Addressing first the argument of Celotex that Hartman is not disabled because he can allegedly return to work, we need only repeat that the judgment was clearly not based on this consideration. It was instead based on La.R.S. 23:1221(4)(p), which provided that compensation may be awarded for impairment of a physical function, whether that impairment prevents the claimant from working or not, Clarius v. Fogleman Truck Lines, Inc., 367 So.2d 1264 (La.App. 3rd Cir.1979).
The next question is whether Hartman proved that his lungs were impaired. His case was basically the testimony of Dr. Morton Brown, his treating physician, to the effect that he suffers from “mixed dust pneumoconiosis”, and as a result he tires easily because his lungs no longer provide sufficient oxygen to his blood. We find this testimony, together with Hartman’s subjective complaints of tiredness and shortness of breath, sufficient to constitute a prima facia case of impairment of the lungs. •'
Celotex argues that because its three medical experts disputed the diagno *1313 sis of Dr. Brown, that it rebutted Hartman’s case. We note, however, that Dr. Brown saw Hartman regularly during an eight day hospital stay and did follow up tests on two other occasions. Dr. Jones, called by Celotex, saw Hartman once, and their other two doctors testified only from the medical records. We therefore find nothing manifestly erroneous in the trial court crediting the testimony of a treating physician over that of one other doctor who saw the patient once and two others who did not see him at all, especially when Dr. Jones admitted that Hartman’s lung X-rays showed the effects of asbestos exposure, Irvine v. Sentry Insurance Co., 415 So.2d 467 (La.App. 1st Cir.1982).
The next issue is whether Hartman proved that his work at Celotex caused or contributed to his condition. It is not disputed that silica, mica and talc are fibro-genic dusts that cause pneumoconiosis. The question is thus whether these substances were found at Celotex between 1970 and 1981, in sufficient quantities to have contributed to or caused Hartman’s problem. In regard to talc and mica, there is no question that these substances were used at the plant. Mr. McDonald’s testimony about the quantities of these dusts in the air, while not scientifically precise, was certainly graphic enough to show that they existed in substantial levels. It also showed that the vacuum system malfunctioned regularly. Further, the conclusion of Celotex’s own consultant that in 1974 the levels of silica in the plant were in excess of allowable limits, made a very persuasive case in Hartman’s favor.
The strongest rebuttal evidence introduced by Celotex were the reports of Dr. Hammad which showed only traces of these dusts. However, these tests were done after Hartman’s time of employment at the plant, and are therefore of questionable relevance. On these facts, we see nothing erroneous in concluding that it is more probable than not that these dusts were the cause of Hartman’s condition.
We finally turn to Hartman’s allegation in his answer to this appeal. His sole contention is that the trial court erred in casting Celotex for only one-half of the compensation and medical benefits. We agree. In Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1982), the court held that no contribution was owing from former employers of a worker, even though their conditions of work may have contributed to the disease, except as provided in La.R.S. 23:1031.ID. While that case was construing La.R.S. 23:1031.1, instead of La. R.S. 23:1221(4)(p) applicable here, we find no reason to distinguish the two statutes so as to reach a result different from Carter on this point.
For the foregoing reasons, we therefore amend the award of compensation owing by Celotex to $163 per week for 100 weeks plus all past and future medical expenses attributable to the disease. All costs of this appeal are assessed against the defendant-appellant.
AMENDED AND AS AMENDED, AFFIRMED.
GRISBAUM, J., concurs with written reasons.