CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "I”, Parish of Jefferson, wherein the Honorable Wallace C. LeBrun granted defendants’ motion for involuntary dismissal, LSA-C. C.P. art. 1672, at the close of plaintiff’s case, thereby dismissing plaintiff’s claim with prejudice. We affirm.
Mr. Jessie Gales began his employment in the asbestos manufacturing field with R.J. Darne in 1942. In 1942, R.J. Darne was purchased by Asbestone who continued to manufacture asbestos products. Asbestone, in turn, sold the business to Gold Bond Building Products, a division of National Gypsum Company, in 1953. Gold Bond operated the plant until 1981 when they sold it to International Building Products, Inc. (IBP).
Mr. Gales worked continuously at the same physical plant in the same capacity, “that of a ‘right hand roller man’ ”, throughout all of the ownership changes. His duties included the operation of a Cubi-lator (phonetic) roller which rolled a wet asbestos mixture into certain thickness for products such as asbestos siding and corrugated roofing. During Mr. Gales’s entire employment, he was continuously exposed to varying amounts of asbestos dust, fibers and silica.
Mr. Gales began to experience difficulty in performing his job; and in 1983 he took an early retirement due to asbestosis. This lung disease was diagnosed by Dr. Morton Brown, a pulmonary specialist, and Dr. Victor Alexander, Chairman of the Occupational Medicine Clinic at Ochsner Foundation.
In 1983, Mr. Gales filed an action seeking worker’s compensation benefits from Gold Bond Building Products/National Gypsum Company. Trial was conducted on September 7, 1984; and at the conclusion of plaintiff’s case, defendants filed a motion for involuntary dismissal. On November 9, 1984, defendants’ motion was granted and plaintiff’s claim was dismissed with prejudice. The trial judge, in applying Carter v. Avondale, 415 So.2d 174 (La.1982), ruled that plaintiff had asbestosis as a result of his asbestos exposure; but, since International Building Products was the last caus *84 ative employer, Gold Bond/National Gypsum was not responsible for worker’s compensation benefits.
Plaintiff brings this appeal, asserting as sole error the trial court’s application of Carter, supra.
Much has been written regarding the interpretation of Carter, supra. Appellant contends Carter, “was not intended to blanketly apply to every situation where there are successive employers.” Appellant’s interpretation of Carter.is that the last substantially causative employer should be liable and not simply the last employer where the worker had some exposure. Accordingly, appellant argues that since the “overwhelming testimony in this case is that Mr. Gales’s exposure to asbestos at National Gypsum was the substantial causative factor in the development of his disease ... National Gypsum should be held liable for Mr. Gales’s compensation.” Appellant concludes the application of Carter, “will have the effect of relieving the real culprit, National Gypsum, ... from any liability whatsoever.”
Appellees, on the other hand, assert the test imposed by Carter is not which employment was the substantial causative factor in the development of the employee’s disease as suggested by appellant; but rather, in the case of successive employers, the last employer whose work was a causative factor in the development of a disabling occupational disease, is solely responsible for paying worker’s compensation benefits. Appellees argue the application of Carter, supra, by the trial court to the instant fact was correct.
Jessie Carter sued his last employer, Avondale, for worker’s compensation benefits as a result of his total and permanent disability due to the contraction of silicosis. Carter had been employed by Avondale for approximately nine years when he quit due to this total disability. Avondale filed a third party petition against plaintiff’s immediate past employer, whom he had worked for for twenty-eight years. Carter had been exposed, on a daily basis, to materials which were known by each of his employers to cause silicosis. The Supreme Court held that Carter had established by a preponderance of the evidence that his employment with both employers was a substantial factor in causing his disability and that his disease was occupationally related to his employment with both. The dissent reasoned that the statute clearly provided that liability lay with the employer at the time of the most recent exposure or injury, bearing a causal relationship to the disability.
On rehearing, the Supreme Court reversed itself and held that Carter had failed to show that his exposure at a previous employer was a substantial factor causing him to contract silicosis and become disabled. The court in Carter, 415 So.2d at 181, stated:
“R.S. 23:1031.1 does not specifically exclude the possibility of contribution by former employers when their working conditions contributed to the occupational disease. Nevertheless, a fair interpretation of 23:1031.1 indicates no intent to depart from the general scheme of the compensation act — the employer at the time of the accidental injury causing disability is responsible for paying compensation benefits. The only departure in 23:1031.1 is subsection D, covering disability from occupational diseases occurring when a worker has been employed for less than twelve months. In that case, the worker must prove by an ‘overwhelming preponderance of the evidence’ that the disease was contracted within the last twelve months in order to establish that the ‘occupational disease ... shall become compensable.’ 23:1031.ID.
“No provision in 23:1031.1 indicates that employers from years back should share responsibility (for paying compensation benefits) with employers of the worker at the time the disease ‘manifested itself’ and ‘disabled’ the worker. 23:1031.IE. This is consistent with the other provisions of the compensation act, which places responsibility on the employer at the time of the ‘accidental injury’ causing disability, and not on previ *85 ous employers whose conditions might have made the worker only more susceptible to injury. See Starks v. Hardware Mutual Causalty Co., 231 So.2d 657 (La.App.1970).
“The decision to require contribution from a former employer, whose working conditions might have contributed to the occupational disease which ultimately disables the worker, is a policy decision which is best left to the legislature....”
Carter holds that apportionment of compensation benefit payments among present and past employers, although not expressly prohibited, is inconsistent with the general compensation scheme and is therefore inappropriate. Accordingly, the last causative employer is solely responsible for an employee’s disability.
In this case, the evidence presented by the plaintiff at trial showed that the plaintiffs last employer was IBP and that during his two year employment with IBP, he worked with asbestos-containing products and was exposed to asbestos fiber in the ambient air on a daily basis. Furthermore, plaintiffs own doctors testified that Mr. Gales’s exposure at IBP contributed to his lung disease. Although plaintiff’s doctors did opine that his exposure prior to March, 1981 could have resulted in damage like that found by Dr. Brown in 1983 and Dr. Alexander in 1984, Dr. Alexander testified that for any given individual it would not be possible to predict whether a dust disease process would progress in the absence of any further exposure.
The plaintiff’s own evidence clearly showed that he did not become disabled while he was employed by appellee. In fact, it was not until after his two years of employment with IBP that he became disabled from asbestosis.
International Building Products, Inc. was the last employer whose work was a causative factor in the development of the disease and not appellee. As a matter of law, IBP would be solely responsible for paying appellant’s worker’s compensation benefits. Further, appellee cannot be held responsible simply because the plaintiff failed to name International Building Products, Inc. as a party defendant.
The manifest error rule is applicable to the appellate review of worker’s compensation cases and such cases will not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for such findings, unless shown to be clearly wrong. Mayeur v. American Cyanamid Co., 459 So.2d 592 (La.App. 5th Cir.1984). Appellant has failed to demonstrate to the satisfaction of this court that the trier of fact was “clearly wrong.”
Accordingly, for the above stated reasons, the judgment granting the motion of involuntary dismissal is hereby affirmed with appellant to pay all costs of this appeal.
AFFIRMED.