358 So.2d 700 (1978)
Gerard HANLON, Plaintiff,
v.
SLINE INDUSTRIAL PAINTERS, INC. and Liberty Mutual Insurance Company, Third-party Plaintiffs and Defendants in Reconvention-Appellees, and
PPG Industries, Inc., Third-party Defendant and Plaintiff in Reconvention-Appellant.
No. 6408.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1978.
Rehearing Denied May 24, 1978.
Writ Refused July 3, 1978.
*701 Stockwell, Sievert, Viccellio, Clements & Shaddock, Fred H. Sievert, Jr., Lake Charles, for third-party defendant and plaintiff in reconvention-appellant.
Raggio, Farrar, Cappel & Chozen, Richard B. Cappel, Lake Charles, for third-party plaintiffs and defendants in reconvention-appellees.
Baggett, McCall, Singleton & Ranier, William B. Baggett, Lake Charles, for plaintiff-appellee.
Before WATSON, GUIDRY and FORET, JJ.
FORET, Judge.
This is a workmen's compensation case. The real issue is whether silicosis is a true "occupational disease" type case, the liability for which would rest with the employer for whom the plaintiff was working at the time that he contracted the disease, PPG Industries, Inc. or is silicosis the typical "accident" type case, the liability for which would rest with the employer for whom the plaintiff was working at the time of his ultimate collapse, Sline Industrial Painters, Inc.
The trial court held that silicosis is a true "occupational disease" type case, the liability for which would rest with the employer for whom the plaintiff was working at the time he contracted the disease. PPG Industries, Inc. (hereafter PPG) has appealed the trial court judgment. We affirm.
Our brother in the trial court has written excellent reasons for judgment, and we take the liberty of adopting his reasons as our own:
"Gerard Hanlon was an industrial painter. During the pursuit of his occupation, he contracted silicosis and became disabled. All claims for workmen's compensation benefits as asserted by Hanlon were settled by court-approved compromise on October 7, 1976, for $25,000.00. Sline Industrial Painters, Inc. and its insurer, Liberty Mutual Insurance Company on the one hand, and PPG Industries, Inc. on the other hand, each contributed $12,500.00 to the settlement and reserved their respective rights to claim indemnification or recoupment of the $12,500.00 contribution from the other. In this suit, each side seeks the determination of their respective liabilities, if any.
"Hanlon obtained his painter's union card in about 1944, and was first employed by Sline in about 1950. During the next five years, approximately, he more or less alternated working between two contractors, Jackson and Sline. Thereafter, until he *702 went to work for PPG in the early 1960's, except for short intervals, he worked exclusively for Sline. In the early 1960's, under a contract Sline had with PPG, Hanlon went to work at the PPG plant site. The contract between Sline and PPG required PPG to pay any workmen's compensation benefits which may have become owed to Hanlon while working at PPG. Therefore, for all practical purposes, the parties and the court have treated Hanlon as an employee of PPG during the period of time that he worked at PPG. Approximately two or three years after Hanlon started work for PPG, in about 1966, PPG began what was described as its expansion program. From about 1966 continuously for approximately four years thereafter, Hanlon did sandblasting and pot-tending. During this period of time he was subjected to extreme exposure to silica particles. During the years prior to this time, his exposure to silica dust was minimal, having done sandblasting on only three occasions for short intervals of no longer than one month each. In about 1970, he was relieved of his sandblasting and pot-tending duties. However, sandblasting operations continued at PPG and Hanlon was continuously subjected to the inhalation of silica particles during the remainder of his employment at PPG, but to a lesser degree. He last worked for PPG on or about June 15, 1975. During the period from the early 1960's to June 15, 1975, Hanlon did work for Sline at other jobs, but only for short intervals, the total aggregate time; amounting to only some several months. On these occasions he did no sandblasting. Hanlon did no work from June 15, 1975, until the early part of August, 1975, when he was sent by Sline to an American Bridge job in Orange, Texas. He worked there three days and during this three-day period, for the first time since about 1970, he did sandblasting work. During this three-day period, he for the first time experienced searing pain in his chest, and quit work. Thereafter he sought medical attention and his condition was subsequently diagnosed as silicosis.
"PPG first contends that it is not liable because Hanlon did not become disabled while working for PPG, that the disease did not become disabling until plaintiff was working for Sline in Orange on August 3, 1975, and that Sline is solely responsible since Hanlon sustained a disabling `accident' while working for Sline on the Orange job.
"The court rejects that contention since this is an "occupational disease" case and is not a typical "accident" case within the meaning of those terms in the workmen's compensation act. Silicosis is a progressive disease contracted over a period of years. The work at Orange was simply the last straw. The principle of law applicable in typical accident cases that an employer takes his employee as he finds him is not applicable in occupational disease cases. The cases of Williams v. Sherwood Homes, Inc., 333 So.2d 756 [La.App. 3 Cir. 1976]; Henderson v. Core Const. Co., 295 So.2d 874 [La.App. 1 Cir. 1974]; Lum v. Employer's [Employers] Mutual Liability Ins. Co. of Wisconsin, 216 So.2d 889 [La.App. 2 Cir. 1968]; Roussel v. Colonial Sugars Co., 318 So.2d 37 [La., 1975]; and Brown v. Kaiser Aluminum & Chem. Corp., 250 So.2d 99 [La.App. 4 Cir. 1971], are not applicable to the instant case. These cases were cited by PPG in support of its contention that non-disabling silicosis is similar to a non-disabling back condition or a non-disabling arthritic wrist condition or a non-disabling heart condition; and that only when there is some unforseen or unexpected event which suddenly produces objective symptoms from an accident on the job are disabling benefits due the employee by that specific employer.
"It is true as stated in LaCoste v. J. Ray McDermott & Co. [250 La. 43], 193 So.2d 779 [1967], and Chivoletto v. Johns-Manville Products Corporation, 330 So.2d 295 [La., 1976], that in occupational disease cases there must be a showing of disability or serious impairment of a physical function before recovery is allowed. But it does not necessarily follow that liability rests on the employer at the time the disease became disabling, as would be true in the typical *703 `accident' case. R.S. 23:1031.1 does not require that there be an accident in occupational disease cases. Also, Section 1031.1 states that a claimant cannot recover benefits for an occupational disease from a short-term employer, i. e., an employer for whom a plaintiff has worked for less than twelve months, unless the claimant can establish that he contracted such occupational disease during this short-term employment by an overwhelming preponderance of the evidence. Covington v. Rex Painting, Inc., 315 So.2d 368 [La.App. 4 Cir. 1975]; Bartie v. Zurich American Insurance Co., 205 So.2d 740 [La.App. 3 Cir. 1967].
"The court in Covington stated:
'We can readily agree that the "contracting" of silicosis is difficult to pin-point. But we suppose that that very circumstance is one of the reasons for the Legislature's provision that, in short-term employment, the plaintiff's evidence must be the overwhelming preponderance. The Legislature presumably deemed it harsh and counter-productive to oblige an employer whose environment might provide one last straw to pay the price of all the straws that years of environment in similar previous employment contributed.'
"The medical evidence is clear that Hanlon's silicosis was not contracted during the three-day employment by Sline in August, 1975. Accordingly, Sline, being a short-term employer, cannot be held responsible simply on the basis that the disease became disabling during this three-day period.
"PPG also argues that the court in Covington merely held that since the plaintiff had not worked for the employer for twelve months and could not prove he developed silicosis during that employment, that the plaintiff could not recover from the last employer. However, PPG argues, there is nothing in the opinion which states or implies that Covington can go back against any former employer. While it is true that the opinion does not go that far, there is nevertheless authority permitting an employee to recover from a former employer. See Chivoletto, (cited supra). The holding in Chivoletto is in keeping with the obvious spirit and intent of Section 1031.1.
"Among the possible results of this case most favorable to PPG is that both Sline and PPG be held liable in solido. Sline's liability would be predicated on the theory that the disease was initially contracted while Hanlon was working for Sline as a long-term employer prior to his employment by PPG. It can be argued that Hanlon first contracted the disease during the three periods of approximately one month each while working under Jimmy Doran for Sline.
"In considering this possibility, the nature of silicosis should be noted. The court's interpretation of the nature of this disease is substantially as follows. Silicosis develops as the result of the inhalation of silica particles into the lungs. These silica granules become embedded in the lungs and granulomas form over them, walling off these foreign bodies. As more silica particles are inhaled, more granulomas form, and the more granulomas that are formed, the more the vital capacity of the lungs is decreased. A number of years of inhaling the particles are required to disable the victim. Silicosis can exist in varying degrees, and not necessarily be disabling. The foreign bodies themselves do not decrease the vital capacity of the lungs, the granulomas do. The disease is progressive in the sense that it progresses by the continued inhalation of silica dust over a period of years. But it is not progressive in the sense that once contracted it progresses absent continued contact with disease-causing agents, such as a cancer does once it is contracted.
"If the disease progressed by and of itself once any silica particles were inhaled, the court would have no difficulty in placing at least partial responsibility on Sline since the evidence is to the effect that Hanlon's initial contact with silica was made during the period he was employed by Sline prior to his employment by PPG. But the court does not believe that it is the intent of Section 1031.1 that in a silicosis *704 case liability is placed on a former employer simply because initial and minimal contact with silica is made by the employee during that period of employment. But for the employment by PPG, Hanlon would never have become disabled by silicosis. The short periods of exposure to silica particles prior to employment by PPG would have had no disabling effect whatsoever on Hanlon.
"It was the excessive exposure to silica particles for four consecutive years followed by five or six years of continued exposure to a lesser degree at PPG that caused the disability. Because of the nature of the disease it cannot realistically be said that the initial minimum contact with silica was the `contracting' of the disease.
"For these reasons the court is of the opinion that Sline and Liberty Mutual are entitled to recover $12,500.00, without interest, from PPG. Costs of this proceeding to be divided equally between PPG on the one hand and Sline and Liberty Mutual on the other hand, as stipulated."
The judgment of the trial court is affirmed. Costs of this appeal are assessed against PPG Industries, Inc.
AFFIRMED.