363 So.2d 1253 (1978)
Otis FAZANDE
v.
CONTINENTAL GRAIN COMPANY and the Travelers Insurance Company.
No. 9617.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
*1254 Leonard A. Washofsky, Hess & Washofsky, New Orleans, for plaintiff-appellee, Otis Fazande.
Montgomery, Barnett, Brown & Read, Charles A. Boggs, Terry J. Freiberger, New Orleans, for defendants-appellants, The Travelers Ins. Co. and Continental Grain Co.
Hailey, McNamara, McNamara & Hall, Laurence E. Larmann, Metairie, for defendant-appellant, Aetna Cas. and Surety Co.
Hammett, Leake, Hammett, Hulse & Nelson, Domonic J. Gianna, Christovich & Kearney, R. K. Christovich, New Orleans, for defendants-appellants, Aetna Cas. and Surety Co., Continental Ins. Co. and American Motorists Ins. Co.
Before GULOTTA, STOULIG and GARRISON, JJ.
GULOTTA, Judge.
In this workmen's compensation case, defendants appeal from awards of compensation benefits, medical expenses, penalties and attorney's fees based on a finding of permanent and total disability resulting from an occupational pulmonary disease. In answer to the appeal, plaintiff seeks an increase in the amount of the attorney's fees and an award for frivolous appeal.
It is defendants' contention that although plaintiff is unable to return to his former job in a grain elevator[1] he failed to show that he is unable to "engage in any gainful occupation" whether or not the same or a similar occupation as that in which he was employed at the time of the injury or disease. According to defendants, because plaintiff is able to engage in a sedentary or semi-sedentary job, he is able to be gainfully employed and therefore is not permanently and total disabled.[2] Defendants also argue the trial judge erred in excluding evidence relating to plaintiff's ability to engage in a sedentary occupation and expert evidence relating to the availability of sedentary jobs. They further claim the judge erred in his determination that defendants were arbitrary and capricious in denying plaintiff's claim. Alternatively, defendants contend that if plaintiff is permanently and totally disabled the disability occurred from an accumulation of grain dust during the fifteen years of employment at the grain elevator; that the disability resulted not from an occupational disease but from a series of accidents (traumatic allergic reactions resulting in respiratory problems); and that prior insurers during *1255 the fifteen year term of plaintiff's employment are liable in solido for the time, during plaintiff's employment, coverage was extended by each insurer.[3]
We find no merit to these contentions, accordingly, we affirm.

PERMANENT TOTAL DISABILITY
The medical evidence is virtually uncontradicted that plaintiff suffered an allergic reaction to grain dust causing severe occupational obstructive pulmonary disease. Also uncontradicted is the fact that plaintiff is unable to return to his former occupation at the grain elevator. In this connection, plaintiff testified that because of shortness of breath and weakness, he has not worked, either at the grain elevator or elsewhere, since he discontinued employment on May 1, 1976. Although defendants' expert[4] indicated in an affidavit in support of a motion for summary judgment that the inhalation of grain dust amounted to a series of accidents over an extended period of time causing insult and trauma to the respiratory system, in his testimony he classified plaintiff's condition as an occupational pulmonary disease.
Because of his disability, plaintiff is unable to return to his former occupation or to work of a similar character, and clearly his condition would place him into the permanently totally disabled category under the earlier statute and jurisprudence.[5] However, in a 1975 amendment permanent total disability was defined as an inability to engage in "any gainful occupation for wages . . ."[6] In the instant case, because of medical testimony that plaintiff could engage in a sedentary or semi-sedentary occupation, defendants claim, plaintiff is not permanently and totally disabled.
Although one of the medical experts[7] indicated plaintiff could be considered for sedentary or semi-sedentary job in which the physical requirements were extremely limited, this expert added that plaintiff cannot be considered for any type of sustained physical work. This witness explained further that plaintiff might be suitable for a job "sitting at a gate" or "checking individuals or papers" but that an elevator operator's job would be difficult because it involves standing. A fair evaluation of this expert's testimony, upon which defendants rely, is that it is unlikely that plaintiff can be restored to sufficient pulmonary reserve to do steady physical work, however, ". . . it may be possible to rehabilitate him for semi-sedentary or sedentary employment." Another medical expert[8] indicated that plaintiff was significantly impaired from doing any kind of meaningful manual labor and that he is "very significantly" impaired from gainful employment. This expert added that plaintiff would be severely handicapped from doing any manual labor or fast walking other than sedentary *1256 work involving slow-paced exertion. Furthermore, even defendants' medical expert indicated that a person prone to flu and bronchitis (plaintiff has exhibited susceptibility to bronchitis) might have problems of absenteeism which might make him unemployable.[9] Plaintiff testified that he has a problem doing "practically everything". Fazande stated that even when sitting down for an extended period of time he gets out of breath and feels a tightness in the chest.
The question whether a claimant is disabled within the meaning of the compensation law is a factual one. Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4th Cir. 1974); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1st Cir. 1977). The trial judge, in oral reasons, stated:
"I find him to have occupational disease as defined by that Section which makes him totally and permanently disabled and very possibly excluded from any possible employment in the present job market."
Our evaluation of the evidence leads to a conclusion, as reached by the trial judge, that plaintiff is suffering from an occupational disease as defined under LSA-R.S. 23:1031.1; is unable to "engage in any gainful occupation"; and is permanently and totally disabled.

EVIDENTIARY RULINGS
Although the trial judge might have hastily restricted, to some extent, evidence of plaintiff's ability to be gainfully employed in jobs other than those of a similar character or nature as his former employment and might have discouraged expert testimony on the availability of jobs of a light or sedentary nature, we fail to find any prejudice to defendants' rights. The evidence in our case reflects that this plaintiff is unable to engage consistently in any gainful occupationb. Under the circumstances, evidence of the availability of sedentary jobs, as it turned out, has questionable value.

PENALTIES AND ATTORNEY'S FEES
Plaintiff became unemployed on May 1, 1976. The employer's insurer had receipt of notice of plaintiff's claim on August 17, 1976. The medical reports on plaintiff's condition were received by the insurer on October 28, 1976. A "notice of loss" from the employer was received by the insurer on August 25, 1976. Suit was filed in January, 1977. On October 21, 1976 the insurer was furnished with a report from West Jefferson Hospital dated June 29 and 30, when plaintiff was hospitalized for his pulmonary problem, which included a report from the treating physician that plaintiff was totally disabled. Other medical reports were furnished to defendant at that time.
Under the circumstances, we conclude defendants were aware of plaintiff's severe pulmonary problem causing his disability. Because of the uncontradicted evidence that Fazande was unable to return to his former occupation, he would have been entitled to, at least, partial disability benefits under the 1975 amendment. See LSA-R.S. 23:1221(3); LeBlanc v. Commercial Union Assurance Co., supra; Kilbourne v. Armstrong, supra. Defendant, however, made no payments whatsoever to plaintiff. Accordingly, we cannot say the trial judge erred in his finding that the denial of benefits was arbitrary and capricious. Plaintiff is entitled to statutory penalties and attorney's fees.
The trial judge, in consideration of the effort of plaintiff's attorney on the trial level and in contemplation of preparation of an appeal, awarded $5,000.00 in attorney's *1257 fees.[10] The evidence considered relating to the effort expended by plaintiff's counsel on both court levels, we cannot say the award is either excessive or inadequate. We deem it reasonable compensation for all the legal services performed, including those in our court.
We reject the argument, however, that plaintiff should be granted an additional award for defendant's frivolous appeal. The delay occasioned by the appeal is evidence of the insurer's arbitrary and capricious failure to pay plaintiff's claim. We have affirmed the award for penalties and attorney's fees. Defendant's failure to pay benefits pending appeal is not properly the subject of a frivolous appeal but is the subject of penalties and attorney's fees.

PRO-RATA CONTRIBUTION OR SOLIDARY OBLIGATION
Finally, we reject Continental Grain's insurer's alternative argument that if plaintiff is entitled to benefits then the previous insurers who provided coverage to plaintiff's employer during the fifteen years of his employment are liable for their pro-rata shares or in solido with defendant. In this connection defendant relies on the testimony of Dr. Ziskind that the inhalation of grain dust amounted to a series of "insults" or "microtraumas" and argues that a series of accidents or injuries over this 15-year period caused plaintiff's disability.
Defendants claim that Jennings v. Louisiana and Southern Life Insurance Co., 290 So.2d 811 (La.1974) and Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976) support a finding that inhalation of foreign matter is an injury or accident. It is true that the Jennings court recognized silicosis as an "injury" or "accident" as defined in the disability insurance policy, but the court also recognized silicosis as an occupational disease. The result reached by the trial court in our case is compatible with the Jennings case. In Parks the claimant had inhaled fabric dust and lint in her work in a garment factory (for an approximate period of five months) which aggravated her pre-disposition toward respiratory difficulty and caused her to contract acute bronchitis from which she subsequently recovered with no ill effects. The court held that she had sustained an "accidental injury" entitling her to benefits during her illness and recovery. In denying her permanent disability benefits, however, the court stated that her inability to return to work in a garment factory was not related to the accident, but rather to her pre-existing respiratory difficulty. In our case the disabling occupational disease resulted from inhalation of grain dust over a 15-year period. No pertinent factual similarity exists between Parks and our case.
In support of the contention that all the insurers are solidarily liable, defendants cite several cases holding that where a claimant's disability is caused by a combination of two or more accidents, the different insurers at the times of the contributing accidents may be held solidarily liable for compensation benefits. Lachney v. Employers Commercial Union, 337 So.2d 624 (La.App. 4th Cir. 1976); Scott v. Hartford Accident and Indemnity Co., 302 So.2d 641 (La.App. 3d Cir. 1974); Carter v. Tri-State Insurance Co., 259 So.2d 433 (La.App. 2nd Cir. 1972); Fontenot v. Great American Indemnity Co., 127 So.2d 822 (La.App. 3d Cir. 1961). Though we do not quarrel with this settled jurisprudence, it is clear that the cited cases deal with distinct, separate accidents with acute effects. In Lachney, Scott and Fontenot two distinct work-related accidents caused back pain and led to the disabling back condition. In Carter, plaintiff's back problem was brought about by three incidents: the shifting of heavy weight on plaintiff while lifting a beam, a fall from a ladder, and heavy lifting. The "mircro-trauma" in our case has no such immediate, acute effect as the accidents in the cited *1258 cases. Rather, plaintiff's inhalation of grain dust resulted in scarring of the lung and an allergic reaction over a long period of time. Clearly plaintiff's claim is based on occupational disease and not a series of definable accidents. The jurisprudential rule relied on by defendant, therefore, has no applicability to the instance case.
Defendants also argue that even though plaintiff's disease may have become disabling during the period of Travelers' coverage, the medical evidence indicates that plaintiff had respiratory problems as early as 1963 and that x-ray examination in 1975 (before the effective date of Travelers' policy) shows permanent scarring of plaintiff's exposure to grain dust. Defendants contend therefore, the insurers are solidarily liable. In this connection defendants rely on Hanlon v. Sline Industrial Painters, Inc., 358 So.2d 700 (La.App. 3d Cir. 1978); Writ refused.
In Hanlon plaintiff worked for one employer for approximately thirteen years (with extremely heavy exposure to silica dust for four years and continuous exposure to a lesser degree for an additional five years) during which time he contracted silicosis. Thereafter plaintiff worked for three days for another employer during which time his silicosis became disabling. The question before the court was which employer should pay compensation benefits. Holding that plaintiff had an occupational disease, the court concluded that the employer for whom he was working when he contracted the disease was liable and not the employer for whom he was working when his disease became disabling.
Hanlon, however, is clearly distinguishable from our case. In Hanlon the employee became disabled after working for his last employer three days. In our case plaintiff has worked for one employer at all times. Furthermore, the medical evidence in our case establishes that defendant Travelers provided coverage to plaintiff at the time he became disabled (February 26, 1976) and on last day of the last exposure (plaintiff's last day of work, May 1, 1976). The pertinent provisions of the Travelers policy state:
IV. Application of Policy
"This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period."
When we consider these provisions relating to the application of the policy together with the medical evidence which establishes the date of disability and date of last exposure we conclude, as did the trial judge, that the disability from the disease "occurred within the term of the comp policy written by Travelers Insurance Company and that they alone are solely responsible for the payment of compensation under that policy".[11]
Accordingly, we affirm.
AFFIRMED.
NOTES
[1] Plaintiff was employed by defendant from April 19, 1961 through May 1, 1976. He started working as a laborer and tractor driver pushing grain on barges, but during the last four years he was a "bindex" operator filling bins with grain.
[2] LSA-R.S. 23:1221(2) provides:

"1221. Temporary, permanent, or partial disability; schedule of payments.
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
[3] Continental Grain and its insurer, Travelers, third partied the prior insurers seeking that each be cast for its pro-rata contribution or be held solidarily liable with defendants for any judgment awarded to plaintiff. Plaintiff's employment extended from April 19, 1961 through May 1, 1976. The workmen's compensation insurers during that time were as follows: Aetna Casualty & Surety Company (1961-1968); Continental Insurance Company (November 1, 1968-October 1, 1970); Kemper Insurance Company (American Motorists Ins. Co.) (October 1, 1970-July 1, 1975) and defendant insurer, The Travelers Ins. Co. (July 1, 1975-July 1, 1976).
[4] Dr. Martin M. Ziskind, an expert in pulmonary diseases.
[5] Prior to the 1975 amendment the pertinent workmen's compensation statute, LSA-R.S. 23:1221(2) defined total permanent disability as an inability "to do work of any reasonable character." In Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695 (1952) and Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739 (1950) the court interpreted the statute to mean work of a similar nature or character.
[6] See LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir. 1977), writ refused, 351 So.2d 174 (La.1977); Kilbourne v. Armstrong, 351 So.2d 802 (La. App. 1st Cir. 1977).
[7] Dr. Ziskind.
[8] Dr. Morton Brown, an internist specializing in pulmonary diseases.
[9] In this connection, Dr. Ziskind stated:

"The big problem in his employment would be can he show up to work every day. And, if his historyActually I think as it was given, was that he wasn't prone to cold, to lower respiratory infections, but those would be the prime factors in preventing him from appearing at work and would of course determine his usefulness on the jobThat was actually the reason why he terminated his employment with the elevator. He was away at least half of the time."
This physician further stated that if plaintiff were prone to colds and flu, "the ups and downs of his bronchitis would make him unemployable".
[10] In oral reasons for judgment, the trial judge stated:

"I fix attorney's fees in the amount of five thousand dollars taking into consideration in figuring that figure that the matter will, without question, be appealed and said fee is to reflect at least the preparation of whatever is necessary in connection with the appeal. I am not talking about the submission of briefs, argument, appearances and so forth on appeal."
[11] An examination of the policies of the prior insurers reveals that these policies contain the same restriction on coverage for occupational disease i. e., that the last day of the last exposure to the condition causing the disease must occur during the policy period.