| JERRY MAY, PERRY MAY, | * | NO. 2024-CA-0272 |
| DAVID MAY, VERNELL MAY | | |
| ESPA, AND IRMA MAY | * | |
| TAYLOR | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| COOPER/T. SMITH | | STATE OF LOUISIANA |
| STEVEDORING COMPANY, | * * * * * * * | |
| INC., ET AL. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06325, DIVISION "B"
Honorable Marissa Hutabarat, Judge
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Dale N. Atkins, Judge Karen K. Herman, Judge Monique G. Morial)

**HERMAN, J., DISSENTS WITH REASONS**

Mickey P. Landry
Frank J. Swarr
Matthew C. Clark
Benjamin D. Rumph
LANDRY & SWARR, LLC
1100 Poydras Street
Suite 2000
New Orleans, La 70163

    COUNSEL FOR PLAINTIFFS/APPELLANTS, JERRY MAY, PERRY MAY, DAVID MAY, VERNELL MAY ESPA, AND IRMA MAY TAYLOR

E. Scott Hackenberg
John L. Henchy
HENCHY VERBOIS & HACKENBERG, LLC
7737 Old Hammond Highway
Suite B-4
Baton Rouge, LA 70809

    COUNSEL FOR DEFENDANT/APPELLEE, THE LOUISIANA INSURANCE GUARANTY ASSOCIATION

Henry Minor Pipes, III
Rachel S. Kellogg
PIPES MILES BECKMAN, LLC
1100 Poydras Street
Suite 3300
New Orleans, LA 70163

     COUNSEL FOR DEFENDANT/APPELLEE, LIBERTY MUTUAL
     INSURANCE COMPANY

**REVERSED AND REMANDED**
**JUNE 11th, 2025**

This matter involves asbestos exposure litigation. Appellants/Plaintiffs ("Plaintiffs"), the heirs and siblings of the decedent employee, Monroe Wade May ("Mr. May"), appeal the trial court judgment which denied their motion for partial summary judgment and granted the cross-motions for summary judgment of Defendants, Liberty Mutual Insurance Company ("Liberty') and the Louisiana Insurance Guaranty Association ("LIGA"). For the reasons that follow, we reverse the judgment granting Liberty's and LIGA's cross-motions for summary judgment and denying Plaintiffs' motion for partial summary judgment. We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Mr. May died in August 2019 as a result of mesothelioma. Plaintiffs filed a wrongful death and survival action petition for damages (the "Petition") in July 2020, alleging that Mr. May was exposed to asbestos while he worked as a stevedore from the mid-1960s through the 1970s. One of Mr. May's employers was Louisiana Stevedores, Inc. ("La. Stevedores").

1

During Mr. May's employment, Liberty and Employer's National Insurance Co. ("ENIC") insured La. Stevedores for workers' compensation and employer's liability ("WC/EL").[1] After ENIC became insolvent, LIGA assumed its statutory obligation to provide insurance coverage to La. Stevedores pursuant to La. R.S. 22:2051, et seq. (formerly La. R.S. 22:1375, et seq.).

In their answer to Plaintiffs' Petition, Liberty and LIGA (collectively "Defendants") contended that Mr. May's contraction of mesothelioma was not a covered claim within the WC/EL policy pursuant to "Exclusion (e)." The exclusion limited coverage for bodily injury by disease claims to those made within thirty-six months of the policy's expiration date. Defendants noted that Plaintiffs alleged Mr. May was exposed to asbestos from the 1960s through the 1970s resulting in his contraction of mesothelioma; however, Plaintiffs' Petition was not filed until July 2020.

Thereafter, Plaintiffs filed a motion for partial summary judgment. Plaintiffs averred the policy's definition of a bodily injury by disease and a bodily injury by disease caused by an accident was ambiguous and the ambiguity should be construed against Defendants to prohibit their application of Exclusion (e) to bar coverage.

Defendants opposed Plaintiffs' motion for partial summary judgment and filed their own cross-motions for summary judgment. Defendants asserted the

---

[1] Mr. May's claim falls under employers' liability coverage.

policies' language was not ambiguous and reiterated that Exclusion (e) barred Plaintiffs' action to recover for Mr. May's contraction of mesothelioma.

The matters were brought for hearing on January 30, 2024. The trial court agreed with Defendants, denying Plaintiffs' motion for partial summary judgment and granting Defendants' cross-summary judgment motions.

This timely appeal followed.[2]

## JURISDICTION

"Prior to addressing the merits of an appeal, appellate courts have the duty to determine sua sponte whether their appellate court jurisdiction has been properly invoked by a valid, final judgment." *Safford v. New Orleans Fire Dept.*, 2023-0495, p. 18 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 924-25 (citing *Bayer v. Starr Int'l Corp.*, 2017-0257, p. 3 (La. App. 4 Cir. 8/15/17), 226 So.3d 514, 517). Pursuant to La. C.C.P. art. 2083, "[a]n appellate court's jurisdiction extends to final judgments and judgments made expressly appealable by law." *McGaha v. Franklin Homes, Inc.*, 2021-0244, p. 24 (La. App. 4 Cir. 2/4/22), 335 So.3d 842, 858 (citing *Riley v. Plaquemines Par. Sheriff's Off.ice*, 2020-0262, p. 4 (La. App. 4 Cir. 9/9/20), 365 So.3d 38, 40). "A judgment that determines the merits in whole or in part is a final judgment." La. C.C.P. art. 1841. An interlocutory judgment is one that determines "preliminary matters in the course of the action." *Id.*

Well-established jurisprudence provides that a judgment denying a motion for summary judgment is not appealable. *Elysian, Inc. v. Neal Auction Co., Inc.*, 2020-0674, p. 7 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1082 (citing La. C.C.P.

---

[2] Plaintiffs initially filed a writ application to seek review of the judgment. However, this Court declined to exercise its supervisory jurisdiction and denied the writ. *See May v. Cooper/T. Smith Stevedoring Company, Inc., et al.* 2024-0056 (La. App. 4 Cir. 2/8/24).

art. 968). However, where cross-motions for summary judgment raise the same issues, courts generally can review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. *See Williams v. BestComp, Inc.*, 2022-00100, p. 10 (La. 12/9/22), 354 So.3d 1211, 1220 n.9; *Marseilles Homeowners Condo. Ass'n v. Broadmoor, LLC*, 2012-1233, p. 3 (La. App. 4 Cir. 2/27/13), 111 So.3d 1099, 1103 n.2. Here, Defendants' cross-motions for summary judgment raise the same issues as Plaintiffs' motion for partial summary judgment. Hence, this Court will consider the denial of Plaintiffs' motion for partial summary judgment in this appeal.

## SUMMARY JUDGMENT/STANDARD OF REVIEW

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). Its intended purpose is to "pierce the pleadings and to assess the proof in order to see whether there exists a genuine need for trial." *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 2019-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (quoting *Bridgewater v. New Orleans Reg'l Transit Auth.*, 2015-0922, p. 4 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 411). Pursuant to La. C.C.P. art. 966(D)(1),

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La. C.C.P. art. 967(B) further provides:

4

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Appellate courts review the grant or denial of a summary judgment motion *de novo* using the same standard employed by the trial court in deciding the merits of the motion; accordingly, appellate courts need not accord deference to the facts and evidence as analyzed by the trial court or its reasons for judgment. *See Smith v. State*, 2018-0197, p. 3 (La. App. 4 Cir. 1/9/19), 262 So.3d 977, 980 (citations omitted). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment." *Certain Underwriters at Lloyd's of London v. Duxworth Roofing and Sheetmetal, Inc.*, 2022-0821, p. 7 (La. App. 4 Cir. 7/18/23), 370 So.3d 1144, 1149 (quoting *Wagner v. Tammany Holding Co., LLC*, 2013-0374, p. 7 (La. App. 4 Cir. 10/9/13), 135 So.3d 77, 82).

## ASSIGNMENTS OF ERROR

Plaintiffs assert the following assignments of error:

1. The trial court enforced an insurance exclusion without primary evidence that the policy included the exclusion;

2. The trial court failed to follow *Faciane v. Southern Shipbuilding Corp.*, 446 So.2d 770 (La. App. 4th Cir.1984), as precedent to determine that the policy's language was ambiguous;

3. The trial court weighed testimony regarding insurance coverage;

4. The trial court failed to follow the Louisiana Supreme Court precedents that define asbestos injuries;

5. The trial court failed to follow Workers' Compensation Act jurisprudence militating for coverage; and

6. The trial court misclassified the EL policies as a claims-made policy, despite record evidence that they are occurrence policies.

## DISCUSSION

### *Definition (c); Exclusion (e)*

The disputed policy provisions herein involve the definitions of bodily injury by accident, bodily injury by disease, and bodily injury by disease caused by an accident, and the application of Exclusion (e). According to Defendants, the National Council on Compensation Insurance ("NCCI") standard WC/EL policy form utilized in the industry from 1954 until 1984 contained the following pertinent provisions under Coverage B (Employers' Liability Coverage):

> DEFINITIONS
> (c) Bodily Injury by Accident; Bodily Injury by Disease. The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident." The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident."

6

. . .

Application of the Policy[:] This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

Exclusions

. . .

This policy does not apply:

(e) under coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom;

### *Primary Evidence of Exclusion (e)*

In Plaintiffs' first assignment of error, they maintain the trial court erred in enforcing Exclusion (e). Plaintiffs argue Defendants presented no primary evidence to establish that the exclusion was contained in the policies, and therefore the trial court erred in finding their mesothelioma action was not covered by the policies and untimely. In support of this argument, Plaintiffs rely on this Court's opinion in *Ehlers v. Ports America Gulfport, Inc.*, 2023-0575 (La. App. 4 Cir. 5/16/24), 401 So.3d 159.

In *Ehlers*, the employer, SSA Gulf, settled an action with the family of the decedent employee arising out of the employee's death from mesothelioma due to asbestos exposure. After SSA Gulf's insurers became insolvent, LIGA assumed its statutory obligation to provide a defense to SSA Gulf. *Ehlers*, 2023-0575, pp. 2-3, 401 So.3d at 162. Notwithstanding, LIGA filed a motion for summary judgment denying coverage, arguing the plaintiffs' occupational disease complaint was

7

untimely because it was not brought within thirty-six months after coverage expired pursuant to the Exclusion.[3] *Id.*, 2023-0575, p. 3, 401 So.3d at 162. LIGA did not produce the actual policies issued to SSA Gulf; instead, it introduced into evidence a NCCI Standard Form WC/EI Policy issued to another unrelated insured, which contained the Exclusion. *Id.* LIGA contended that as members of the NCCI, its insurers utilized the same standard policy which incorporated the Exclusion. *Id.* In opposition, SSA Gulf argued that LIGA did not meet its burden of proof to show that any of SSA Gulf's policies contained the Exclusion. *Id.*, 2023-0575, p. 4, 401 So.3d at 163. "[T]he trial court denied LIGA's motion for summary judgment, finding that 'there are genuine issues of material facts as to whether the insurance policies issued to SSA Gulf . . . contain the 36-month exclusion in Louisiana.'" *Id.* (second alteration in original).

Thereafter, SSA Gulf filed a reconventional demand against LIGA for indemnification and its own motion for summary judgment to compel LIGA to meet its coverage obligations. *Id.* Its summary judgment motion reiterated that LIGA could not prove that any policies issued to SSA Gulf contained the Exclusion. *Id.* LIGA essentially relied on the same evidence it offered in support of its own summary judgment motion to oppose SSA Gulf's summary judgment motion. *Id.* In granting SSA Gulf's motion for summary judgment, the trial court found, in part, "that LIGA has failed to sustain its burden of proving that the Workmen's Compensation and Employers' Liability (WC/EL) insurance policies

---

[3] The Exclusion discussed in *Ehlers*, 2023-0575 (La. App. 4 Cir. 5/16/24), 401 So.3d 159, is Exclusion (e) as referenced throughout this opinion.

issued to SSA Gulf[']s legal predecessors . . . contained a 36-month exclusion . . ." *Id.*, 2023-0575, p. 6, 401 So.3d at 164.

In the *Ehlers* appeal, LIGA supported its reliance on the Standard Form policy as proof of the coverage offered with an affidavit from Donald T. DeCarlo ("Mr. DeCarlo"), a former Vice-President and General Counsel for NCCI. *Id.*, 2023-0575, p. 14, 401 So.3d at 168. Mr. DeCarlo stated that member insurers would have been required to use the Standard Form Policy that contained the Exclusion. *Id.*, 2023-0575, p. 14, 401 So.3d at 168-69. Although Mr. DeCarlo found no approved form endorsements to allow a member to waive or modify the Exclusion, he conceded a Standard Form Policy endorsement could be modified if approved by the NCCI. *Id.*, 2023-0575, p. 14, 401 So.3d at 169.

Upon *de novo* review, the *Ehlers* Court found the trial court did not err in granting SSA Gulf's motion for summary judgment. *Id.*, 2023-0575, p. 18, 401 So.3d at 170. The Court noted the record contained "no evidence that any policy issued to SSA Gulf by AMLICO or ENIC [the insurers] contained the Exclusion. Thus, LIGA failed to carry its burden of showing the existence and applicability of the Exclusion." *Id.*, 2023-0575, p. 18, 401 So.3d at 170-71.

Likewise, Plaintiffs herein argue that Defendants did not meet their burden of proof to entitle them to summary judgment relief. Akin to *Ehlers*, Defendants failed to produce the actual policies and relied on secondary evidence to show Exclusion (e) was contained in the policies.

9

In opposition, Defendants contend Plaintiffs' reliance on *Ehlers* is misplaced. They argue Plaintiffs failed to controvert the policies' contents as fact issues in Plaintiffs' own partial summary judgment motion or in opposition to Defendants' cross-motions for summary judgment at the hearing. Hence, they maintain Plaintiffs waived their right to challenge the sufficiency of the evidence regarding proof of Exclusion (e); and as a result, Plaintiffs are precluded from raising the issue for the first time on appeal as no evidentiary challenge was raised before the trial court.

We acknowledge that, in general, appellate courts do not consider issues raised for the first time on appeal. *Graubarth v. French Mkt. Corp.*, 2007-0416, p. 5 (La. App. 4 Cir. 10/24/07), 970 So.2d 660, 664. However, in the present case, the crux of Defendants' cross-motions for summary judgment is that the provisions of Exclusion (e) of the policies prohibited Plaintiffs from recovery because their action was not timely. Our jurisprudence provides the insurer has the burden of proof to show a claim falls within a policy exclusion. *See Choice Found. v. Law Indus., LLC*, 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505. Thus, as the mover in their cross-motions for summary judgment, Defendants' burden of proof, pursuant to La. C.C.P. art. 966(D)(1), required them to prove the scope of coverage provided by the policies and that the policies contained Exclusion (e). Defendants were not relieved of this burden of proof notwithstanding whether Plaintiffs directly contested Defendants' proof that the policies contained Exclusion (e) or the trial court's consideration of the issue at the summary

10

judgment hearing. When reviewing summary judgments, appellate courts look at the record before them and make an independent determination as to whether there are genuine issues of material fact that would preclude summary judgment. *Smith*, 2018-0197, p. 3, 262 So.3d at 980. Accordingly, the scope of an appellate court's authority to conduct a *de novo* review permits this Court to consider whether Defendants met their burden of proof to show the policies contained Exclusion (e) and concomitantly, determine the propriety of the trial court's grant of summary judgment in Defendants' favor.

In the matter *sub judice,* it is uncontested that Defendants did not place the actual policies into evidence or offer direct evidence that their policies contained Exclusion (e). As to the existence of the policies, Liberty offered into evidence an affidavit from a representative of its legal department to show it issued a WC/El policy to La. Stevedores from October 1, 1968 to October 1, 1969. LIGA supported its cross-motion for summary judgment with an affidavit from its claims examiner who attested that ENIC issued workers' compensation coverage from October 1, 1969 to October 1, 1980. Additionally, LIGA relied on an affidavit and various deposition excerpts from Mr. DeCarlo, who also testified in *Ehlers*. Comparable to *Ehlers*, Defendants' supporting summary judgment evidence consisted of "secondary and circumstantial evidence." The end result of Defendants' inability to produce primary evidence of the actual policies means genuine issues of material fact remain regarding the policies' terms and any exclusions contained within the policies, including Exclusion (e).

Upon our independent *de novo* review, and in accordance with *Ehlers*, Defendants failed to meet their burden of proof. Therefore, we reverse the trial court's grant of their cross-motions for summary judgment.

### *Ambiguity in Definition (c)*

Plaintiffs' next argument asserts the policies' definitions of bodily injury by accident, bodily injury by disease, and bodily injury by disease caused by an accident create ambiguity as to whether mesothelioma can be characterized as a disease caused by accident. Plaintiffs' "Motion for Partial Summary Judgment Regarding the Ambiguity of the 36 Month Exclusion and 'Last Day of Last Exposure' Provision," highlighted that Definition (c) states, in part, that "only such disease as results directly from a bodily injury by accident is included within the term 'bodily injury by accident.'" Accordingly, notwithstanding our finding that the trial court erred in granting Defendants' cross-motions for summary judgment, we review this argument to consider whether the trial court erred in denying Plaintiffs' motion for partial summary judgment.

Plaintiffs argue Mr. May's mesothelioma disease directly resulted from an asbestos accident. As an example of an asbestos accident, Plaintiffs note the testimony of Defendants' industrial hygienist expert, Ben Jelin, PhD, CIH. His testimony supported that asbestos sack breaks and spills described by Mr. May and Mr. May's brother could be described as accidents and that initial exposure to asbestos fibers can damage.

Plaintiffs also claim the testimony from Mr. De Carlo, the insurance policy expert witness, who testified that the 1954 policies at issue "probably wouldn't meet the [Flesch] test," a method used by the insurance industry to determine

whether "anybody at any education level could pick it [a policy] up and understand it" substantiates the ambiguity in the policies.[4] Plaintiffs therefore assert the lack of clarity and ambiguity in Definition (c) as to whether Mr. May merely contracted a disease or if the mesothelioma directly resulted from a bodily injury accident means Exclusion (e)—which places a 36-month limitation after the expiration of coverage to file strictly bodily injury by disease claims—is unenforceable and should be construed against Defendants and in Plaintiffs' favor to find coverage. In support of this insurance contractual ambiguity argument, Plaintiffs rely on *Faciane v. Southern Shipbuilding Corp.*, 446 So.2d 770 (La. App. 4th Cir. 1984).

*Faciane* involved a lawsuit filed by an injured worker against the executive officers of his former employer for damages arising out of his exposure to silica/asbestos particles and his silicosis diagnosis. *Faciane*, 446 So.2d at 771, 772. The trial court granted the motion for summary judgment of several past insurers of the executive officers' who contended their policies precluded coverage because the plaintiff's disease occurred after the expiration of their policy periods. *Id.*, 446 So.2d at 772.

On appeal, the appellate court noted the policies at issue contained the following:

> Application of Policy: This policy applies only to injury (1.) by accident occurring during the policy period, or (2.) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease, occurs during the policy period.

*Id.*, 446 So.2d at 774. In answering whether the application of the policies precluded or properly granted summary judgment, the *Faciane* Court noted "[t]he question then becomes, is the contraction of silicosis to be classified as bodily

---

[4] Exclusion (e) was eliminated from the Standard Policy Form in 1984.

injury by accident or bodily injury by disease?" *Id.*   The Court's analysis recognized that a previous decision, *Fazande v. Continental Grain Co.*, 363 So.2d 1253 (La. App. 4th Cir. 1978), had interpreted identical policy application language and found the policy in effect at the time of the last exposure to the conditions which caused the disease provided coverage.  *Id.*  "However, *Fazande*, did not discuss the classification of silicosis as bodily injury by accident or bodily injury by disease under the policies then before the court."  *Id.*   Therefore, *Faciane* distinguished *Fazande* by noting that unlike *Fazande*, the ambiguity of the definitions of bodily injury by accident and bodily injury by disease was expressly before the Court for its consideration in reviewing the trial court's grant of summary judgment in the insurers' favor.  *Id.*

In its review, the *Faciane* Court analyzed the policies' definition of bodily injury contained in Sub-Section C, which provided the following:

> The contraction of disease is not an accident within the meaning of the word "accident" in the term "bodily injury by accident" and only such disease as results directly from a bodily injury by accident is included within the term "bodily injury by accident." The term "bodily injury by disease" includes only such disease as is not included within the term "bodily injury by accident".

*Id.*   In answering the question as to whether the employee's silicosis was a bodily injury by accident or bodily injury by disease, the Court determined that the definitions of the terms were, at best, unclear, reasoning as follows:

> On one hand it seems to exclude contraction of disease as an injury by accident. However, the next clause of the same sentence seems to allow the contraction of some diseases to be classified as accidental injury. Given these circumstances it seems that a genuine issue of material fact as to the classification of appellant's injury existed. The granting of summary judgment was therefore inappropriate.

*Id.*  Consequently, Plaintiffs assert *Faciane's* holding compels a similar finding in the case *sub judice*, namely, that the policies' definition of bodily injury by

accident, bodily injury by disease, and bodily injury by disease caused by accident are unclear, and therefore, ambiguous.

Defendants counter that mesothelioma is unambiguously a bodily injury caused by disease under Definition (c), emphasizing that the trial court found "that the language of the policy is not unclear or ambiguous." Accordingly, Defendants represent that Exclusion (e) excludes coverage as Plaintiffs' Petition was brought decades after the policies expired. Defendants further maintain that *Faciane* is not dispositive of ambiguity as it merely found the policies' definitions to be "unclear," rather than ambiguous. Regardless, Defendants suggest that two other asbestos-related Fourth Circuit cases, *Hayes v. Eagle, Inc.*, 2003-1575 (La. App. 4 Cir. 5/12/04), 876 So.2d 108, and *Courville v. Lamorak Ins. Co.*, 2020-0073 (La. App. 4 Cir. 5/27/20), 301 So.3d 557, with similar policy provisions, supersede *Faciane* in finding no ambiguity in the policies' definition of bodily injury by disease and upholding the enforceability of Exclusion (e).

In *Hayes*, 2003-1575, pp. 4-5, 876 So.2d at 111, the Court determined the language of the policy was clear and unambiguous that the thirty-six month exclusion barred the employee's asbestos claim where the employee left work in 1968 and did not file suit until 2000. Similarly, in *Courville*, 2020-0073, p. 7, 501 So.3d at 561, the Court upheld the grant of summary judgment in favor of the insureds based on the policy's provision which barred coverage unless the claim was raised within thirty-six months of the termination of the policy.

Notably, however, neither *Hayes* nor *Courville* referenced *Faciane*. Most importantly, neither decision directly considered the seminal question posed by *Faciane* or raised in the present appeal, that is, should the contraction of mesothelioma be classified as bodily injury disease by accident or bodily injury by

15

disease as defined by the policies. Our analysis finds the *Hayes* and *Courville* cases similar to *Fazande* in that they also did not specifically address the issue of ambiguity under Definition (c) in classifying mesothelioma as a bodily injury disease caused by accident or solely a bodily injury by disease. Therefore, *Hayes* and *Courville* are distinguishable on that basis; and hence, their findings do not control our review of the present case. *See Faciane*, 446 So.2d at 770.

Notwithstanding, Defendants argue this Court should not be bound by *Faciane*. Defendants suggest we should follow cases in other Louisiana circuits that have directly examined whether an asbestos-related disease is bodily injury by disease or a disease caused by accident and determined that such a disease is not a disease caused by accident within the clear meaning of the policies' terms and definitions. This line of cases is exemplified by *Hubbs v. Anco Insulations*, 1998-2570 (La. App. 1 Cir. 12/28/99), 747 So.2d 804, and followed by *Riverwood Int'l Corp. v. Employers Ins. Of Wausau*, 420 F.3d 378 (5th Cir. 2005), and *St. Romain v. Delta S. Co.*, 2022-0111 (La. App. 1 Cir. 9/22/22), 353 So.3d 778, *writ denied*, 2022-0156 (La. 4/25/23), 359 So.2d 980 (collectively, the "*Hubbs* cases").

The *Hubbs* Court reversed the trial court's grant of summary judgment in favor of the employers/insureds, finding the worker's contraction of asbestosis was not an accident within the meaning of the policies, and thus, the exclusion applied. *Hubbs*, 1998-2570, p. 6, 747 So.2d at 807-08. The decision reasoned as follows:

> There is no exclusion of coverage for bodily injury by accident under the policy in question. There is also no exclusion for disease directly resulting from bodily injury by accident, such as tetanus that directly results from stepping on a rusty nail. The thirty-six month exclusion applies to bodily injury by disease. Rarely do we intentionally contract a disease, and most disease results from contact with something, be it a foreign substance, bacteria, or a virus. But to find that disease that results from accidental contact with a foreign body, such as an asbestos fiber, is bodily injury by accident would be to

> subsume the definition of bodily injury by disease into the definition of bodily injury by accident.
>
> The policy clearly states that contraction of disease is not an accident within the meaning of the policy. We find that contraction of asbestosis is not an accident within the meaning of the policy, and thus the thirty-six month exclusion applies.

*Id.*

In the other two cited *Hubbs* cases referenced herein, the *Riverwood* Court similarly held that "the only reasonable interpretation of the Policies is that an asbestos-related disease is not a 'bodily injury by accident' but rather is a 'bodily injury by disease.' Accordingly, the thirty-six month exclusion provision applies.'" 420 F.3d at 385.

The First Circuit in *St. Romain* also found the definitions were not "ambiguous when interpreted in light of the other relevant policy provisions and considering the meaning of words that best conform to the object of the WC/EL policy." 2022-0111, p. 8, 353 So.3d at 785. The decision specifically concluded the policy was "subject to only one reasonable interpretation—that an asbestos-related disease such as mesothelioma is not a 'bodily injury by accident' as defined by the policy.'" *Id.,* 2022-0111, p. 8, 353 So.3d at 784. However, *St. Romain* agreed that the definitions portion of the Liberty policy was "poorly drafted." *Id.*, 2022-0111, p. 8, 353 So.3d at 784-85.

We shall apply the rules of contract interpretation to evaluate Plaintiffs' and Defendants' opposing positions as to whether *Faciane* or the *Hubbs* cases control in determining if Definition (c) is ambiguous for purposes of barring or permitting coverage under Exclusion (e).

17

### Contract Interpretation

An analysis of an insurance policy begins with the foremost rule that an "an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts as set forth in the Civil Code." *Green ex rel. Peterson v. Johnson*, 2014-0292, p. 4 (La. 10/15/14), 149 So.3d 766, 770. "Interpretation of a contract is the determination of the common intent of the parties." *See* La. C. C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *See* La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning; words of art and technical terms must be given their technical meaning when the contract involves a technical matter. *See* La. C.C. art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *See* La. C.C. art. 2050.

The determination as to whether a contract is clear or ambiguous is a question of law. *Green*, 2014-0292, p. 4, 149 So.3d at 771. With reference to enforcing an exclusionary clause, this Court explained as follows in *Lewis v. State Nat'l Ins. Co. Inc.*, 2022-0693, p. 24 (La. App. 4 Cir. 5/19/23), 368 So.3d 653, 688, that the insurer has the burden of proof:

> [A]lthough an insurer can limit its liability if, in so doing, this does not result in a conflict with statutory provisions or public policy, the insurer bears the burden of proof if it claims that a loss falls within a policy exclusion. *Choice Found. v. Law Indus., LLC*, 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (quoting *Perniciaro v. McInnis*, 2018-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231). "[A] provision which seeks to narrow the insurer's obligation is strictly construed against the insurer ...." *Reynolds v. Select Props.*, 1993-1480 (La. 04/11/94), 634 So.2d 1180, 1183 (citing *Garcia v. St. Bernard Sch. Bd.*, 576 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

Accordingly, our jurisprudence provides that any doubt or ambiguity in an insurance policy be construed in favor of the insured and against the insurer, and ambiguity arising out of the enforceability of an exclusionary provision mandates that the policy be interpreted liberally in favor of coverage. *See Heath v. Continental Cas. Co.*, 50,860, p. 7 (La. App. 2 Cir. 8/10/16), 200 So.3d 911, 915. This liberal construction in favor of the insured and against the drafter applies if an insurance policy is susceptible of two or more reasonable interpretations. *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 2012-0095, p. 10 (La. App. 4 Cir. 8/28/13), 123 So.3d 787, 793.

Upon applying these precepts and rules of contract interpretation, specifically, interpretation of an insurance policy to the present matter, we decline to follow the *Hubbs* cases. Rather, we agree with Plaintiffs that pursuant to *Faciane*, Definition (c) is unclear and ambiguous.

Contrary to the *Hubbs* cases, we find Defintion (c)'s declaration that "the contraction of a disease is not an accident within the meaning of the word 'accident' in the term 'bodily injury by accident'" does not unambiguously exclude mesothelioma as a disease caused by accident. As noted by *Faciane*, this reasoning disregards the remaining part of Definition (c) which states that "only such disease as results directly from a bodily injury by accident is included within the term 'bodily injury by accident.'" Our review shows that Definition (c) does not define what is solely a bodily injury by disease and a disease that arises from an accident. *Hubbs* espouses that allowing accidental exposure to asbestos to be considered an accident would "subsume" the definition of bodily injury by disease into the definition of bodily injury by accident. 1998-2570, p. 6, 747 So.2d at 807-

19

08. However, *Hubbs* overlooks that it was the insurer that included the language to permit coverage for "only such disease as results from bodily injury by accident" without providing a definition of same and leaving such coverage open to interpretation. Although *Hubbs* suggests that tetanus is an example of a bodily injury by disease caused by accident, under the rules of contract interpretation, it is not the province of the judiciary to supply a definition that is not included in the policy. Rather, in accordance with La. C.C. arts. 2047 and 2050, the judiciary's role is to give the words of a contract their general prevailing meaning and interpret each provision in light of the other contract provisions so that the provisions are given the meaning suggested by the contract as a whole.

The policies herein do not include a list of diseases designated as bodily injury by disease or bodily injury by disease caused by accident. Nor do they contain explicit definitions of either category of disease. Therefore, the context of the policies offer no reference to determine what is a disease caused by accident or construe the insurer's intent in creating a category of coverage for a bodily injury by disease caused by accident. The policies' provisions simply give no guidance to ascertain the suggested meaning of bodily injury by disease caused by accident. Further, we take judicial notice that the term "bodily injury by disease caused by accident" is not a common term to which a "generally prevailing meaning" attaches.

Because of the lack of clarity and ambiguity as to what constitutes a bodily injury by disease caused by accident as put forth in Definition (c), we likewise are not persuaded by the findings in *Riverwood*, 420 F.3d at 385, and *St. Romain*, 2022-0111, p. 8, 353 So.3d 784, that the only reasonable interpretation of the policies compels a finding that an asbestosis-related disease is a bodily injury by

disease and not a bodily injury by disease caused by accident. The policies cannot support this conclusion where Definition (c) fails to define a bodily injury by disease caused by accident. However, we do agree with *St. Romain*, 2022-0111, p. 8, 353 So.3d at 784-85, that Defendants' definitions section was "poorly drafted." As such, we find the "poorly drafted" Definition (c) creates ambiguity and lack of clarity.

As referenced by *Faciane*, 466 So.2d at 774, the lack of a clear definition in the policies allow for some diseases to be classified as accidental injury. This makes the policies' definition of bodily injury by disease and bodily injury by disease caused by accident susceptible to more than one reasonable interpretation. When that occurs, the insurer has not met its burden of proof to enforce an exclusionary clause and the policy is strictly construed against the insurer in favor of coverage. *See Lewis*, 2022-0693, p. 24, 368 So.3d at 688. Therefore, Plaintiffs' claim that Defendants cannot apply Exclusion (e) to bar Plaintiffs' mesothelioma action as untimely has merit.

We pretermit discussion of Plaintiffs' remaining assignments of error having found the trial court erred in granting Defendants' cross-motions for summary judgment and denying Plaintiffs' motion for partial summary judgment.

## CONCLUSION

The trial court erred in granting Defendants' cross-motions for summary judgment and dismissing them from Plaintiffs' lawsuit. We find genuine issues of material fact remain that preclude summary judgment relief arising out of Defendants' failure to meet their burden of proof to show the policies contained Exclusion (e).

Further, we find the trial court erred in denying Plaintiffs' motion for partial summary judgment. Definition (c) creates ambiguity regarding the classification of a bodily injury by disease and a bodily injury by disease caused by accident. Accordingly, this ambiguity is construed against Defendants herein to prohibit application of Exclusion (e) to bar coverage of Plaintiffs' Petition as untimely.

Accordingly, we reverse the trial court's February 8, 2024 judgment granting Defendants' cross motions for summary judgment and denying Plaintiffs' partial motion for summary judgment. We remand for further proceedings consistent with this opinion.

.
.

**REVERSED AND REMANDED**